IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INNOCOLL PHARMACEUTICALS, LTD. and INNOCOLL BIOTHERAPEUTICS N.A., INC., Plaintiffs, | CIVIL ACTION |
| v. | NO.  23-3601 |
| ASTRAZENECA PLC, ASTRAZENECA CHINA LTD., and ASTRAZENECA INVESTMENT (CHINA) CO., LTD., Defendants. | |

MEMORANDUM

HODGE, J.                                                                                                           October 18, 2024

Plaintiffs Innocoll Pharmaceuticals, Ltd. and Innocoll Biotherapeutics N.A., Inc. bring this case against AstraZeneca PLC, AstraZeneca China, Ltd., and AstraZeneca Investment (China) Co., Ltd. for fraudulent inducement, negligent, misrepresentation, and operating a RICO enterprise. (*See generally* ECF No. 1-1)[1]. Defendants move to dismiss this case for *forum non conveniens*, lack of personal jurisdiction, and failure to state a claim. (*See generally* ECF No. 11). AstraZeneca argues that the case does not belong in a United States court, because there is an adequate alternative forum and the balance of public and private interests favors litigation in a Chinese forum. (ECF No. 11-1 at 4). Plaintiffs dispute that China is an adequate forum for this case, and argue that their choice of forum should be afforded great weight. (ECF No. 15 at 8).

In considering the parties' arguments, the Court is not convinced that the United States is the best legal forum for this dispute and agrees with Defendants that this case should not be heard

---

[1]        The Court adopts the pagination supplied by the CM/ECF docketing system.

1

in the United States. Thus, the Court will dismiss this case for *forum non conveniens*. This Court has the authority to rule on *forum non conveniens* without reaching questions of personal jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Hence, because this Court finds that China is a more appropriate forum for this case to be heard, it will dismiss for *forum non conveniens* and decline to rule on other jurisdictional or merits-related questions.

I.   BACKGROUND

Plaintiffs Innocoll Pharmaceuticals, Ltd. and Innocoll Biotherapeutics N.A., Inc. (together, "Innocoll"[2] or "Plaintiffs") bring this case against AstraZeneca PLC, AstraZeneca China, Ltd., and AstraZeneca Investment (China) Co., Ltd. ("AstraZeneca" or "Defendants") for allegedly making false statements and representations to Innocoll about its relationship to another entity—Gemini Biopharm Holdings Limited ("Gemini")—during negotiations to enter a Licensing Agreement to develop and sell a drug, Xaracoll, in China. Innocoll Pharmaceuticals, Ltd. is an Irish corporation, with a registered office in Dublin, Ireland. (ECF No. 1-1 ¶¶ 15-16). Innocoll Biotherapeutics N.A., Inc. is a Delaware corporation which was headquartered in Newtown Square, PA, until November 1, 2021, and since then has been headquartered in Princeton, New Jersey. (*Id.* ¶ 17). AstraZeneca PLC is a UK corporation with a registered office in Cambridge, England. (ECF No. 1 ¶ 13(c)). AstraZeneca Investment (China) Co., Ltd. is a Chinese corporation with a registered office in Shanghai, China. (*Id.* ¶ 13(d)). Throughout their complaint, Plaintiffs refer to "AstraZeneca China

---

[2]   Where necessary, the Court will specify if it is referring to only one of the Plaintiffs or Defendants (e.g. "Innocoll Pharmaceuticals"). However, it will use the company name to refer to all Plaintiffs or all Defendants collectively.

2

Ltd," a corporation they state is organized under the laws of China. Defendants maintain that no such entity exists. (*Id.* ¶ 13(e)).[3]

Innocoll describes the facts as follows. In 2021, Innocoll began looking for a licensing partner to develop and sell Xaracoll, a non-opioid drug-device that provides postsurgical local analgesia, in China. (ECF No. 1-1 ¶¶ 26, 29). Innocoll began negotiations with a potential licensee, going so far as to draft an agreement. (*Id.* ¶¶ 30-31). While those negotiations were underway, Cindy Wu, the director of New Product Planning and Strategy at AstraZeneca China, reached out to Innocoll on April 22, 2021 by email, inquiring about "opportunities for collaboration of Xaracoll in China market." (*Id.* ¶¶ 33-34). Innocoll did not immediately engage in conversations with AstraZeneca China, but maintains that Wu continued to reach out to Innocoll. (*Id.* ¶¶ 35-37). On June 10, 2021, Wu and David Arvan, Innocoll Biotherapeutics' Executive Director of Business Development, spoke on the phone about AstraZeneca serving as the exclusive licensee of Xaracoll in China. (*Id.* ¶ 38).

Innocoll alleges that while AstraZeneca was soliciting Innocoll, AstraZeneca was also involved in the creation of a new joint venture entity, Gemini, which was owned by another company, Hillhouse, and which Plaintiffs believed to be "under instruction from AstraZeneca China." (*Id.* ¶¶ 41-44).

In August 2021, Wu, who had previously been communicating with Innocoll on behalf of AstraZeneca China, began to act as a representative of Gemini. (*Id.* ¶¶ 46-48). Arvan also received communications from Sean Chen, General Manager of AstraZeneca China's respiratory business unit and CEO of Gemini, and Ed Zhang, who worked for Hillhouse. According to Innocoll, these

---

[3] In its recitation of the facts, the Court will refer to "AstraZeneca China" where Plaintiffs do so in their complaint. However, the Court acknowledges Defendant's statements that "AstraZeneca China" does not exist, and does not make any finding on that issue at present.

employees and others made statements that led Innocoll to believe that Gemini was a joint venture between Hillhouse and AstraZeneca China, and that AstraZenenca China had provided support and resources to Gemini. (*Id*. ¶¶ 51-57). Innocoll further alleges that Gemini presented to Innocoll a slide deck touting reasons Innocoll should license Xaracoll to Gemini, which included data about AstraZeneca China, as well as names of AstraZeneca Executives apparently associated with Gemini, including Leon Wang, AstraZeneca PLC Executive Vice President. (*Id*. ¶¶ 61-66). Following these representations, Innocoll and Gemini engaged in negotiations and due diligence, and ultimately exchanged draft licensing agreements. (*Id*. ¶¶ 67-71). Towards the end of negotiations, Zhang, from Hillhouse, told Innocoll that Gemini was waiting on final approval from AstraZeneca and Hillhouse to move forward with the deal. (*Id*. ¶¶ 75-76). Innocoll's Complaint is largely focused on Gemini's representations that it was associated with AstraZeneca China, and that those representations influenced Innocoll when making the decision to enter a licensing agreement with Gemini over other options. (*Id.* ¶ 112).

Innocoll Pharmaceuticals Limited and Gemini entered in a Collaboration and License Agreement (the "Agreement") on October 8, 2021. (*Id*. ¶ 77). The Agreement granted Gemini the rights and licenses to develop and commercialize Xaracoll in China, Hong Kong, and Macau. (*Id.* ¶ 80). Among the terms in the Contract, Innocoll was supposed to receive an "Upfront Payment" of $15,000,000 within 90 days of the Agreement's effective date. (*Id*. ¶ 82). Innocoll states that after the Agreement was executed AstraZeneca remained involved with Gemini and point to meetings that were held to evidence the interaction between AstraZeneca and Innocoll. (*Id*. ¶ 89). The first Joint Steering Committee meeting between Gemini and Innocoll, on December 7, 2021, included Chen, Wu, and Michael Ma, an employee of both Gemini and AstraZeneca China. (*Id.* ¶ 90). Following this meeting, there was some back and forth between the companies about when

the deal would be publicly announced, with Gemini requesting no press release be issued before February 1, 2022 (*Id.* ¶ 91-93). On January 10, 2022, Wu emailed Arvan requesting a change to the Agreement's non-compete statement, with a draft revision attached from Kay Tait, a Senior Transaction Director in AstraZeneca PLC's Business Development Operations team, who is located in the UK. (*Id.* ¶¶ 94-95). Soon after, Wu informed Arvan that AstraZeneca China was restructuring Gemini. (*Id.* ¶ 96). In February 2022, news outlets reported that AstraZeneca China was abandoning these restructuring plans, which Innocoll understood to mean that AstraZeneca China would not be providing resources or support to Gemini. (*Id.* ¶¶ 102-105).

Soon after AstraZeneca China's restructuring fell apart, Gemini failed to pay Innocoll the $15,000,000 owed under the Agreement. (*Id.* ¶ 106). Innocoll sent Gemini a notice of breach on March 2, 2022, and terminated the Agreement with all parties. (*Id.* ¶¶ 108-09). Innocoll reached resolutions with Gemini and Hillhouse but has not yet been paid the $15,000,000 it is allegedly owed. (*Id.* ¶ 111).

Innocoll now brings claims against AstraZeneca for fraudulent inducement, negligent, misrepresentation, and operating a RICO enterprise. Innocoll alleges that AstraZeneca China continually made representations that it was an owner and financial backer of Gemini in order to induce Innocoll to back out of negotiations with a competing company and enter into an agreement with Gemini. (*Id.* ¶ 112). Innoccoll claims that AstraZeneca China did not tell Innocoll until June 2022 that AstraZeneca was not an owner of Gemini, and did not have any financial commitments to Gemini. (*Id.* ¶ 113). Innocoll now seeks the $15,000,000 "Upfront Payment" it argues that AstraZeneca's false statements and misleading activity caused it to lose out on, as well as future payments owed under the Agreement and other incurred fees and expenses. (*Id.* ¶¶ 125-27).

## II.   LEGAL STANDARD

Forum non conveniens "is a non-merits ground for dismissal." *Sinochem Int'l Co.,* 549 U.S. at 432. The question presented when contemplating if a matter should or should not be dismissed under the doctrine of *forum non conveniens* does not rest on whether a case *may* be heard in this forum, but whether a more appropriate forum for adjudicating the dispute exists elsewhere in the world. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n.22 (1981). Although a Plaintiff's choice of forum should rarely be disturbed, dismissal for *forum non conveniens* is appropriate "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,'" *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir.2008)).

The Third Circuit has set out a three-step analysis when considering a motion to dismiss on *forum non conveniens* grounds. *See Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). First, the district court must determine whether an adequate alternate forum can hear the case. *Id.* Second, the court must determine the amount of deference due to plaintiff's choice of forum. *Id.* Third, the court must balance the relevant private and public interest factors. *Id.* At each step of the analysis, the defendant bears the burden of persuasion. *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991).

The Supreme Court has held that a District Court may dismiss an action based on *forum non conveniens* without addressing questions of subject matter or personal jurisdiction "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co.,* 549 U.S. at 432.

## III. DISCUSSION

### i. Availability of an Alternative Forum

The first factor in the *forum non conveniens* analysis is whether an adequate alternative forum is available for plaintiffs to bring their case. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 160 (3d Cir. 2010). A forum is considered adequate "where defendants are amenable to process and plaintiffs' claims are cognizable." *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). Defendants assert that China is an adequate forum because Defendants are amenable to process there and Plaintiffs may bring their claims in China. (ECF No. 11-1 at 5-6). Defendants have provided a declaration attesting that most, though not all, of Plaintiffs' claims are cognizable in Chinese courts. (*See* ECF 11-5 ¶¶ 9, 11-20).

Plaintiffs dispute that China is an adequate alternative forum based on the fact that Defendants "do[] not identify which exact tort Plaintiffs can bring, the elements of the alleged Chinese claims, the burden of proof, what damages would be available, to what extent Plaintiff could conduct discovery, nor whether Plaintiff could compel the testimony of witnesses" (ECF No. 15 at 9). Plaintiffs also note that their RICO claims would not be cognizable in China. (*Id.*).

The Court finds that China is an adequate forum to hear Plaintiff's claims. The standard to be considered "adequate" is quite low, and the fact that a change in law in another forum is less favorable to the plaintiff when compared to their chosen forum is rarely sufficient to deem an alternative forum inadequate. *See Piper Aircraft Co.*, 454 U.S. at 254. Defendants have provided a sworn declaration from a former Chinese judge and cited significant case law in support of their contention that Plaintiffs' tort claims may proceed in China. This is more than enough. Plaintiffs offer no support for their argument that Defendants must provide the elements, burden of proof, available damages, etc. for each Chinese tort claim. With respect to the RICO claims, there is no

7

dispute that Plaintiffs could not bring RICO claims in a Chinese court. However, courts have frequently held that the fact that a plaintiff cannot assert a RICO claim under another forum's law does not preclude dismissal for *forum non conveniens*. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 193 (3d Cir. 2008) (internal citations omitted). The Court has determined that Defendants have met their burden of showing that China is an adequate alternate forum.

    **ii.**    **Deference to Plaintiff's Choice of Forum**

The next step in the *forum non conveniens* analysis is determining how much deference Plaintiffs' choice of forum is owed. Generally, a plaintiff's choice of forum is afforded great weight. However, the Supreme Court has held that Plaintiff's choice of forum is given less weight when a Plaintiff is foreign. *See Piper Aircraft*, 454 U.S. at 236; *Lony,* 886 F. 2d at 633. This is based upon "a reluctance to assume that the choice is a convenient one," when a foreign plaintiff selects a Unites States forum. *Lony,* 886 F. 2d at 634. However, "that reluctance can readily be overcome by a strong showing of convenience." *Id*.

Defendants argue that Plaintiff's choice of forum deserves little deference; "[t]he entity that entered into the License Agreement with Gemini was Ireland-based Innocoll Pharmaceuticals, Ltd.," and the U.S. subsidiary was involved only insofar as some U.S. employees participated in negotiations. (ECF No. 11-1 at 12). Moreover, Defendants claim that nearly all witnesses and documents relevant to this case are located in China, resulting in "oppressiveness and vexation" to them were they made to litigate in the United States. *Id*. In this case, Plaintiff Innocoll Pharmaceuticals is an Irish corporation, while its co-plaintiff and subsidiary, Innocoll Biotherapeutics, is headquartered in the United States. Plaintiffs dispute the claim that the United States is not the home forum, since Innocoll Biotherapeutics is based in the U.S., and argue that

"Innocoll Biotherapeutics was the direct target of all of AstraZeneca China's misrepresentations." (ECF No. 15 at 9-10).

This is an unusual situation, where one plaintiff—the parent company—is based abroad and its subsidiary, also a named Plaintiff, is based in the United States. However, for the sake of this inquiry, the Court finds that it is more appropriate to view Innocoll as a foreign Plaintiff based on Innocoll's conduct in this case and the text of the Agreement between Innocoll and Gemini. While some U.S.-based employees were involved in the negotiations, and Innocoll Biotherapeutics is a party to this case, the Collaboration and License Agreement explicitly states that it is between Gemini and "Innocoll Pharmaceuticals Limited, a private company limited by shares incorporated in Ireland having company number 395965 and its registered office at 70 Sir John Rogerson's Quay, Dublin 2, D02 R296, Ireland." (ECF No. 11-4 at 1). Many courts have found that even in situations with far more substantial connections to the forum, dismissal for *forum non conveniens* is still appropriate. *See, e.g.*, *Piper Aircraft Co.*, 454 U.S. at 242 ("Although evidence concerning the design, manufacture, and testing of the plane and propeller is located in the United States, the connections with Scotland are otherwise 'overwhelming.'").

This does not mean that Plaintiffs' choice of forum is afforded no deference. *See Windt*, 544 F.Supp.2d at 419. In determining the precise amount of deference owed to Plaintiff's choice, the Court must balance the "private interest factors affecting the convenience of the litigants and public interest factors affecting the convenience of the forum," that the Supreme Court has laid out. *Windt*, 529 F.3d at 189 (citing *Gulf Oil Corp. v. Gilbert.*, 330 U.S. 501, 508–509). The inquiry regarding deference to Plaintiff's choice of forum is centered on convenience, and after conducting its analysis, the court is not persuaded that the United States is a more convenient forum for anyone.

### iii. Private Interest Factors

"When seeking dismissal on grounds of *forum non conveniens*, a defendant must show that the balance of public and private factors 'tips decidedly in favor of trial in the foreign forum.'" *Kisano,* 737 F.3d at 877 (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir.1991)). Private interests include "the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial." *Kisano*, 737 F.3d at 873 (citing *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 296 (3d Cir. 2010)).

Defendants argue that the private interest factors weigh in favor of dismissal, because the witnesses in this case are largely based in China. (ECF 11-1 at 11). Almost all AstraZeneca employees Plaintiffs name in their complaint are based in China, including individuals involved in negotiations with Innocoll. (*Id.*). Defendants also identify several non-party witnesses "whose testimony is integral to this case but who likely reside in China and are thus 'beyond the reach of compulsory process' of this Court," such as former AstraZeneca employees and Gemini representatives. (*Id.* (citing *Piper Aircraft*, 454 U.S. at 258)). In addition to these witnesses being physically in China, Defendants assert that relevant documentary evidence, both paper and electronic, is also in China. (*Id.*). Defendants further point to the fact that most of this evidence is in Chinese and would require translation were it to be presented to this Court. *Id.*

Plaintiffs respond that modern technology minimizes many of the burdens Defendants allege, including "accessing documents in foreign countries, translating documents, and gathering the testimony of foreign witnesses." (ECF No. 15 at 11). Plaintiffs further dispute the existence of a language barrier, as "negotiations were held in English and the key documents in the Complaint are written in English. The employees and former employees of Plaintiffs who will be key

witnesses in this case live in America and speak English." (*Id.*). Plaintiffs also note that there will be substantial evidence from the U.S., U.K., and Ireland, and that Innocoll's former employees are not subject to China's subpoena power. (*Id.* at 11-12). Plaintiffs argue that all of these reasons mean that the private interest factors favor both parties equally, and thus do not clearly favor dismissal. (*Id.* at 12). In response to Plaintiff's arguments regarding the private interest factors, Defendants state that while there may be testimony and evidence from U.S.-based employees, the "key evidence" is based in China and will come from China-based AstraZeneca employees. (ECF No. 16 at 2-3).

The Court does not disagree with Plaintiffs that there are likely witnesses and evidence outside of China relevant to this case. Nonetheless, the private interest factors weigh in favor of dismissal. A similar situation was at issue in *Kisano*, and the Third Circuit found that while the plaintiff identified "several witnesses in the United States with knowledge of the various deals," defendant pointed to "twenty witnesses located abroad." 737 F.3d at 878. In the present case, some factors, such as former employees being outside a court's subpoena authority and the ease of transporting documents electronically, may affect both sides equally. However, on the whole, it appears that most witnesses and most evidence exist in China, or at least outside of the United States. That a few of Plaintiff's employees live in the United States does not overcome that fact. Therefore, the private interest factors weigh in favor of dismissal.

    iv.   **Public Interest Factors**

Finally, in evaluating the public interest factors, Courts examine "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home;' the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or

11

the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Lony*, 886 F.2d at 640 (citing *Piper Aircraft*, 454 U.S. at 241 n. 6). Put simply, the Court must "consider the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum." *Id.* (citing *Lacey*, 862 F.2d at 48).

Defendants argue the public interest factors weigh in favor of dismissal because: 1) this Court "has little interest in a dispute between pharmaceutical companies headquartered in Ireland (Innocoll), China (AstraZeneca Investment (China) Co., Ltd.), and England (AstraZeneca PLC) over an agreement with a company headquartered in Hong Kong (Gemini) backed by another Hong Kong company (Hillhouse) to market a drug in China."; 2) were the case litigated here, the Court would have to engage in a complex choice of law analysis, which would ultimately reveal the need to apply Chinese law, thus favoring resolution by a Chinese court; 3) holding the case in this forum would unfairly burden citizens of this District, because the case has no connection to this forum; and 4) litigation in this Court would likely last longer than litigation in China. (ECF No. 11-1 at 13-15).

In response to each of Defendants' four arguments, Plaintiffs claim that 1) Defendants' arguments "ignore the strong connections this case has to the forum and that they targeted and defrauded Plaintiff Innocoll Biopharmaceuticals at home in Pennsylvania."; 2) Defendants incorrectly applied New Jersey's choice of law test, rather than Pennsylvania's, which would allow the Court to apply Pennsylvania law to the non-RICO claims; 3) there is no undue burden on a jury to decide a case involving a foreign company defrauding a Pennsylvania company under Pennsylvania law; and 4) the length of litigation does not support dismissal, because Defendants have not shown this Court is unable to manage the case. (ECF No. 15 at 12-14).

With respect to Defendant's third and fourth points—burden on a local jury and length of litigation—the Court agrees with Plaintiffs that these do not weigh in favor of Defendants. Were this case appropriate for this forum, the fact that a local jury would need to hear it, or that it might take a significant amount of time would not dissuade the Court from moving forward with the case. However, these points are irrelevant, because the Court is convinced for other reasons that the United States is not the most convenient forum and, therefore, the case should not be heard here.

Plaintiffs repeatedly argue that it was headquartered in Pennsylvania, and thus AstraZeneca defrauded a Pennsylvania company. However, as the Court understands the record, it was Innocoll Pharmaceuticals, headquartered in Ireland, to whom AstraZeneca initially reached out, and it was Innocoll Pharmaceuticals listed on the Licensing Agreement between the parties. (ECF No. 11-4 at 1). Innocoll alleges that employees from Innocoll Biotherapeutics, the U.S. subsidiary, participated in the negotiations with Gemini, and that at all times during its discussions with Gemini, "[they] were aware that they negotiating with [Innocoll Biotherapeutics' Executive Director of Business Development] Arvan and other Innocoll employees based out of Newtown Square, Pennsylvania, and worked to schedule calls in Eastern Standard Time." (ECF No. 1-1 ¶ 72). The Court does not doubt that all of this is true; however, in the analysis and balancing of the factors, none of it evidences that a Pennsylvania company is the true victim of any alleged misconduct, nor that Pennsylvania would be a more appropriate forum than China, where the events at issue actually took place.

Finally, with respect to the choice of law issue, "the prospect of needing to apply foreign law invites dismissal." *Sunline USA LLC v. Ezzi Grp., Inc.*, 708 F. Supp. 3d 585, 598 (E.D. Pa. 2023) (citing *Piper Aircraft*, 454 U.S. at 259; *Gulf Oil*, 330 U.S. at 509). Plaintiff's arguments that

13

Pennsylvania law would likely apply to the non-RICO claims still require the Court to conduct a choice of law analysis that could ultimately require the application of Chinese law. And though the Court is "capable of applying foreign law" (ECF No. 15 at 14), the Court disagrees with Plaintiffs' claim that doing so is worthwhile because "Pennsylvania has a must greater interest in this dispute." (*Id.*). For all these reasons, the public interest factors weigh in favor of dismissal.

### IV.    CONCLUSION

As stated, the question in the *forum non conveniens* analysis is not whether a case may be heard in a forum, but whether the forum is the best choice to decide the case. The Court understands that Plaintiffs would prefer that a United States court hear this case. However, in this case, where three of the four named parties are foreign, the dispute involves an agreement executed in another country focused on distribution in that country, and most witnesses and evidence are located outside the United States, it is clear to the Court that the United States is not the best forum to decide this matter and that China is an adequate alternative forum. For all the reasons stated, this case is dismissed for *forum non conveniens*. The Court therefore need not rule on the issues of personal jurisdiction or failure to state a claim. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**